Frederick v. Cooper et al.

FREDERICK v. COOPER et al.

Where articles of copartnership between a father and his two sons, provided, that the father is to be charged with fifty dollars for each and every year, commencing the first of August, 1847, to be deducted out of his share of the dividend on the final settlement, unless he furnish labor to that amount at his own expense, and if from infirmity of old age, or if said father shall feel inclined to withdraw from attending to the affairs of the firm at the expiration of two years, one hundred dollars for each year shall be charged to him, and deducted out of his share, as above stated.

Held, 1. That the respective sums of fifty and one hundred dollars per year, were in lieu of the labor and care of the father as a partner, and to pay for them; that he could not share in these sums as a partner; and that he was entitled to share in the increase or profit created by the labor which the money furnished.

2. That if the father did not actually pay these sums, or such of them as were payable, he was to be charged with them, and interest, but not with the profit of them.

And where such articles of copartnership provided, that should the company be closed before the term specified (five years), the two sons should each only be entitled to no more than one hundred dollars of the capital stock, for each and every year of the existence of the company: Held, that each of the sons were entitled to the one hundred dollars per annum, and to their respective shares of the increase of those sums.

Where articles of copartnership, which were dated November 20, 1847, and which provided that the copartnership should continue for five years from and after the first day of August, 1847, recited that the partnership had

Frederick v. Cooper et al.

been made verbally about the 20th of April, 1846, and actually commenced at that time; *Held*, That the previous parol agreement was to be taken as the same in terms with the written; that the written articles must govern as to the duration of the partnership, and the interest of the partners; and that whatever was invested in the partnership business, prior to the writing, must be regarded as belonging to the firm under the written articles.

Where a bill in equity by the surviving partner, against the personal representatives and the heirs at law of the deceased partner, to settle up the partnership business, which business related to both personal and real estate, alleged that on the 20th of April, 1846, the petitioner entered into a verbal contract with J. F. and J. S. F. for the formation of a partnership to engage in the purchase of lands and farming, that after they had so engaged in said business, to wit: on the 20th of November, 1847, they reduced the said agreement to writing; that by said agreement, J. F. was to furnish and put into said firm as capital, $2,000, to buy lands, live stock, and farming utensils of various descriptions; that J. S. F. and petitioner were to devote their time and best endeavors to promote the interests of the company; that J. F. should have one-half of the property owned by said company, and J. S. F. and petitioner, each one-fourth, which was the basis upon which a division of the assets of the company was to be made at the expiration of the company; that the business was to be conducted in the usual way of conducting farming, &c.; that by virtue of said agreement, J. F. entered and purchased certain lands in Polk county (describing them); that the said company made large and valuable improvements on the same; that in April, 1849, J. S. F. sold his interest in the firm to J. F. and left the country; that the lands were entered in the name of J. F., who held the title at the time of his death; that from the time of making the said verbal agreement until the first of October, 1850, the petitioner continued to work on said lands, and gave his sole attention to the affairs of the company; that at the time last named, in pursuance to notice to that effect, as provided for in the agreement, the affairs of said company were closed; that before this, to wit: in June, 1850, by agreement between J. F. and petitioner, a certain portion of the lands were surveyed, and understood between them, as that which petitioner was to have as a portion of his share of said lands, which said lands were as follows (describing them); that in pursuance of such agreement, petitioner built a house and made *other improvements* thereon, in the expectation that when the division took place, he would get said land; that he moved into said house, where he still resides; that petitioner and J. F. had a full settlement and division of all the personal property belonging to the company, with exceptions, which are mentioned; that petitioner and J. F. were unable to agree and settle with regard to a division of said lands first described; that J. F. at the time of said settlement, admitted that petitioner was entitled to, and ought to have, as portion of his share, the lands described, on which he was then building the house, &c.; that J. F. died on the 6th of May, 1852, never having conveyed said lands, or any part thereof, to petitioner; that petitioner performed every part of his agreement of partnership; that the executors and heirs at law of the said J. F.

Frederick v. Cooper et al.

have neglected and refused to divide the property and settle the partnership business, according to, and in the manner pointed out by, the articles of copartnership, &c., to which bill there was a demurrer on various grounds, which was sustained by the court, and the bill dismissed.

*Held*, 1. That inasmuch as the bill stated the amount of capital stock furnished by each partner, it laid a sufficient basis on which to proceed.

2. That if the deceased partner furnished more capital after the commencement of the partnership, his representatives might show the fact, and the bill was not defective because it did not state whether he did or not.

3. That the fact that the lands were purchased in the name of J. F. was no bar, after his death, to the claim of the complainant.

4. That the contract of partnership being in writing, signed by the parties, and containing all the essential matters which could, in the nature of things, be specified, and the land and other property to be bought and used, being to be determined in the future, the objects to which the contract applied might be pointed out by evidence, without any violation of the rules of law in relation to written contracts, or to contracts concerning land.

5. That the complainant's cause, taken together, could not be conducted in the county court.

6. That sections 1362 and 1363 of the Code, present no obstacle to the prosecution of the suit in the District Court.

7. That in making the personal representatives and the heirs at law of the deceased partner, parties to the suit, there was no misjoinder of parties.

8. That the averment in the bill, that the heirs and representatives of the deceased partner, had refused to settle up the business, and divide the property, in the manner specified in the articles of copartnership, gave a sufficient reason for applying to the court to settle the partnership.

9. That the bill disclosed matter upon which the District Court could act, and over which it possessed original jurisdiction.

In a suit in equity to settle up a partnership, where one of the partners is deceased, and where the firm owns real estate, the personal representatives and heirs at law, of the deceased partner, are proper parties to the bill.

A surviving partner may take the affairs of the firm into his own hands, and settle them; but this does not cover the case of a deceased partner, who is indebted to the firm; nor does it preclude the survivor from looking to the estate of the deceased debtor partner.

The county court possesses no jurisdiction over a bill to enforce the specific performance of a contract; nor over a bill in equity, to settle the affairs of a partnership.

## Appeal from the Polk District Court.

THIS is a bill in equity, commenced by Benjamin F. Frederick, as surviving partner, against the personal representatives and heirs at law of Jacob Frederick, deceased. The bill alleges that on or about the 20th of April, 1846,

the petitioner entered into a verbal contract with Jacob
Frederick (his father), and John S. Frederick (his brother),
for the formation of a partnership or joint company, to en-
gage in the purchase of land and farming the same; and
that subsequently, and after they had engaged in said busi-
ness, to wit: on the 20th day of November, 1847, they re-
duced their said agreement to writing, which said agreement
read as follows:

"Article of agreement and association made and entered
into, this twentieth day of November, in the year of our
Lord one thousand eight hundred and forty-seven, (having
been heretofore verbally made about the twentieth of April,
1846), by and between Jacob Frederick and his two sons,
John S. Frederick and B. Franklin Frederick, whereby it is
agreed as follows: that is, the parties to this agreement have
agreed to unite their joint labors, together with such capital
stock as is hereinafter specified, for the purpose of making
and improving a farm, or several farms, on the waters of
Four Mile creek, in Polk county, Iowa, or elsewhere, as cir-
cumstances may appear to require, or the company be en-
abled to do, to farm the land which may be purchased, or
cause the same to be done, in all the various branches of
farming, necessary and proper to be done, and to the raising
of stock of the various kinds which may appear necessary
and profitable, such as horses, cattle, and hogs and sheep.
The said Jacob on his part, agrees to furnish a capital stock
of two thousand dollars, for the use and benefit of the com-
pany, including such expenditures as have already been
made for the benefit of the company; said capital stock is
understood to consist of money to buy lands and other ex-
penditures necessary and proper, and live stock, and farm-
ing utensils of the various descriptions, and also carpenter
tools, all at a fair valuation, a memorandum of which is
hereafter to be made out; and each of the parties to have
a copy. Said Jacob further agrees that the company shall
have the use and benefit of his flock of sheep, consisting of
two hundred and forty head, the increase and fleeces of the
present season, and whatever may accrue hereafter, to be

Frederick v. Cooper et al.

the property of the company, the company to return to said Jacob, two hundred and thirty at the expiration of the firm. Any property which either said John or said Franklin may have of their own, which may be used by the company as common property, each may make out his account against the company, at a fair cash valuation, and at the closing of the concerns of the company, each shall be entitled to receive an equivalent in a similar description of property, with interest. This company shall continue for and during the term of five years, from and after the first day of August, eighteen hundred and forty-seven, unless dissolved as hereinafter provided. So soon as said Jacob pays two thousand dollars, as before specified, he is to charge each, said John and said Franklin, with five hundred (500) dollars, as so much of their legacy, without interest. At the expiration of the term before mentioned, the property of all descriptions belonging to the company, is to be divided, lands, money, and all other property, as follows: said Jacob is to have one-half; said John and said Franklin each to have one-fourth. In order to come at a proper division, or as nearly so as practicable, the purchase by the company to be divided into such tracts as may be most appropriate; the money and sheep to be divided by numbers, and such other stock as will be found proper to divide, in the same way. The lands and other property to be estimated by each of the parties at a money valuation; each one to estimate for himself, and set the sums down in writing; the estimate made by said Jacob to be doubled, and the several estimates to be added together, and divided by four, which is to be taken as the true value. Any property which the company may think advisable, may be sold at auction. Said Jacob is to be charged with fifty dollars for each and every year, commencing the first of August, 1847, to be deducted out of his share of the dividend on the final settlement, unless he furnish labor to that amount, at his own expense, and if from infirmity of old age, or if said Jacob should feel inclined to withdraw from attending to the affairs of the firm at the expiration of two years, one hundred dollars for each

year shall be charged to him, and deducted out of his share as above stated. Each individual forming this company, shall charge himself with all the money by him received in behalf of the firm, and charge the company with all he may pay for the use and benefit of the firm; and any money or property intended for individual use, shall be charged accordingly. If either said John or said Franklin, or both, should be disposed to withdraw and close the concerns of the company, they are at liberty to do so, by giving six months' notice. In all cases where the affairs of the company are closed, and a distribution of the property made, it shall be done about the first of August. Should the company be closed before the term specified, the said John and Franklin shall not be entitled to more than one hundred dollars each, of the capital stock, for each and every year of the existence of the company, and to be charged accordingly. That sum, together with all the increase, value of improvements, and other property, shall be divided as before stated. As the duration of life is always uncertain, should any of the company die, his surviving friends, or a justice of the peace, shall appoint one or more judicious, disinterested person or persons, to act in his stead, in making the distribution of property in conformity with the terms before stated.

"It is fully understood, that during the continuance of the company, said Jacob shall be entitled to one-half of the proceeds of the company for subsistence and clothing, himself and family; the meaning of this is, that it shall be no more than is necessary for that purpose; and in like manner said John and said Franklin, shall each be entitled to one-fourth of the proceeds, the residue of the proceeds to be disposed of for the benefit of the company. No one of the company shall use money, or other property, for individual speculation, without the consent of the others. In case said Jacob may have at any time money of his own during the continuance of the company, and in case said John and Franklin should think it advisable to use more money than the two thousand dollars before specified, to

buy lands or sheep for the benefit of the company; in that case the company will be required to refund and pay to said Jacob, any sum over and above the two thousand dollars, together with eight per cent. interest per annum, when the value on the various descriptions of property is fixed, by the rule before stated. Should more than one of the company wish to have the same property, it shall be set off to the one that is willing to pay the most. Should said Jacob, at any time wish to take twelve sheep from the stock, he has a right to do so, and any such number is to be deducted out of the number to be returned to said Jacob. Each of the parties agrees for himself, to use due diligence and his best endeavors, to promote the best interest of the company; to see that as little as possible be lost by carelessness or neglect; and to use his best judgment in buying and selling and making bargains in general.

"In testimony whereof, and for the faithful performance of the foregoing stipulations, we have hereunto subscribed our names the day and date above written. This company to be known by the name of Frederick & Sons.

Signed triplicate, { JACOB FREDERICK,
JOHN S. FREDERICK,
BENJAMIN F. FREDERICK."

The bill further represents, that about the time of making the said verbal contract, they commenced work together under and by virtue of said contract, and that the said written contract is the one which evidences the terms and character of their said joint undertaking; that by virtue of said agreement, the said Jacob entered and purchased the following parcels of real estate, situate in the county of Polk, to wit: lots seven, eight, nine and ten, and the southeast quarter of section five; the southeast quarter, the south half, and lots one to twelve, inclusive, of section four, in township 78, range 23 west; and the southeast quarter of section 34, in township 79, range 23 west; that on the said lands the said company made large and valuable improvements, in the way of building houses, fencing, breaking prairie, and all other work usual and customary in the improvement of farms;

that at the time of the dissolution of said company, as here-inafter mentioned, there were about one hundred and three acres fenced and in cultivation, three houses and various stables and out-buildings erected, and an orchard set out—all of which was done by the joint labor of said company; and that in April, 1849, the said John S. Frederick sold to the said Jacob, all his right, title, and interest in said company, and went to California.

The bill further represents, that all of said lands were entered in the name of the said Jacob, and the title remained in him at the time of his death; that from about the time of making said verbal agreement until the 1st of October, 1850, the petitioner continued to work said lands, and gave his sole attention to the best interests of said company; that at that time, in pursuance to notice given by the said Jacob, as provided for in said articles, and by mutual consent, the affairs of said company were closed; that before this, to wit: in the month of June, 1850, by agreement between the said Jacob and petitioner, a certain parcel of said lands were surveyed and set apart, and understood between them, as that which petitioner was to have as a portion of his share of said lands (which said parcel of land is described in the petition), making 177 21-100 acres; that in pursuance of that agreement and understanding, the petitioner proceeded to build a house, and make other improvements thereon, and that he moved into and still resides in the said house.

The bill further represents, that in October, 1851, when the business of said company was closed, the said Jacob and petitioner had a full settlement and division of all the personal property belonging to said company, so far as petitioner's share was concerned, except the amount coming to him for his portion of the wool for that season; the fifty dollars for each year from the first of August, 1847, as specified in said agreement, if the said Jacob did not perform that amount of labor; and one other item hereinafter mentioned; that petitioner received his portion of the personal property, with the above exceptions; that at the time of said division, they were unable to agree and settle with regard to the divi-

sion of the said real estate; that no settlement was made in relation thereto; that the said Jacob died on the 6th of May, 1852, without making to petitioner any conveyance of said lands; and that petitioner is the equitable owner of one-fourth of said lands.

The bill further represents, that the petitioner kept each and every part of the said agreement; that he gave all his attention to the business of said company; that at the time of the said Jacob's death, there was due petitioner the sum of $159, with interest from October 1st, 1850, as the amount of the fifty dollars which petitioner was to have each year, or which was to be charged each year to the said Jacob, commencing on the 1st of August, 1847, unless the said Jacob should furnish labor to that amount at his own expense; that such labor to that amount, or any part thereof, was not so furnished by the said Jacob, at his own expense; that there is due and owing to the petitioner from the estate of the said Jacob, the sum of three hundred and fifty dollars, under and by virtue of that part of said agreement, which provides that petitioner and the said Jacob, were each to have one hundred dollars each year from the capital stock, which was not settled at their settlement in October, 1850; that before said settlement, the said Jacob sold to one C. D. Reinking, a portion of a claim which originally belonged to the company, for fifty dollars; that after the settlement, the said Jacob received said fifty dollars, which belonged to the company; that petitioner is entitled to one-fourth of that sum; and that the said Jacob made a last will and testament, which has been duly admitted to probate. The bill then sets out the names of the executors and heirs at law of the said Jacob, and makes them party defendants; avers that complainant has frequently endeavored to have the executors and heirs of the said Jacob settle the claims of petitioner against the estate, and that they have refused so to do; and prays for the necessary relief.

To this bill the defendants filed a demurrer, alleging as causes thereof, the following:

1. The petition shows an unsettled partnership account,

but does not show the amount of capital stock furnished by each of said parties, nor the amount which each partner expended in carrying on the partnership business, and what each received therefrom.

2. It does not show the interest of the several parties, nor the mode and manner of conducting the business, or fix any basis upon which the court can decree an account and settlement of the partnership business.

3. The petition discloses no matter upon which this court can act, or over which it has original jurisdiction.

4. The supposed verbal contract in relation to the partition of said lands, or the setting off to plaintiff said lands, upon which he claims to have made improvements, not having been executed before the death of Jacob, said lands became and was at the death of said Jacob, assets of his estate, the same as any other lands owned by him.

5. The petition discloses no contract or agreement upon which this court can decree a specific performance against the said defendants.

6. That the plaintiff can only prosecute his claim in the county court.

7. There is an apparent misjoinder of matter of equity in relation to real estate, and the enforcement of a supposed contract for lands, and an account, the latter of which this court has no original jurisdiction of, as against the estates of deceased persons.

8. The petition claims the specific performance of a contract in relation to lands, and also an account, which claims are inconsistent, and cannot be joined in the same action.

9. The parties to said partnership in these articles, have agreed upon the tribunal or forum by which said partnership business was to be settled; and said petition gives no reason for applying to this court, and invoking its aid, in settling said partnership.

The demurrer was sustained, and a decree rendered dismissing the bill, at the cost of the complainant, from which he appeals.

Frederick v. Cooper et al.

*J. E. Jewett*, for the appellant.

*J. Parrish* and *Bates & Finch*, for the appellees.

WOODWARD, J.—In April, 1846, the complainant, with his father, Jacob Frederick, and his brother, John S., entered into a verbal agreement of partnership.   On the 20th November, 1847, this agreement was reduced to writing and signed by them.   Their business was the purchase of lands, and the carrying on of husbandry, in any and all of its departments, as they should see fit.   The partnership was to continue five years, from the first of August, 1847.   In order to arrive at the questions in the cause, and our views upon them, it is necessary to have a construction of the articles of partnership, so far at least as they bear upon the present cause.   The partnership actually commenced, under a parol agreement, in April, 1846, which is recognized in the written articles of November 20th, 1847.   The previous parol agreement is to be taken as the same in terms with the written.   But the written one is to be regarded as commencing again.   Therefore the written articles must govern as to duration, and the interest of the parties, whilst, at the same time, whatever was invested in the partnership business prior to the writing, must be regarded as belonging to the firm, under the articles.

The father, Jacob, was to furnish two thousand dollars, to be invested in lands, stock and implements.   The sons were to be charged five hundred dollars each, to be taken from their inheritance in the father's estate.   The father holds two shares in the concern, to one share each in the two sons.   The sons are to give their time, labor, and attention.   The father also is to give labor and attention to the common interest.   If he does not render at least fifty dollars worth of labor each year, he is to pay that sum each year; and if he withdraws altogether from labor and attention to the common concerns, he is to pay one hundred dollars for each year.   He is not to share this fifty or one hundred dollars per annum, because if he does not give this labor and

attention, it is to be found elsewhere; and these sums are supposed to purchase, or to pay for them.

The five hundred dollars to be charged to each of the sons, is one hundred for each year of the duration of the firm. Therefore it is provided, that, if the firm ceases before the expiration of the five years, they shall be entitled to but one hundred each for each year, out of the capital stock. Then comes this question. If the firm continues the five years, and the capital stock, whether in lands, or otherwise, increases in value, in what proportions are the sons to take? Are they to have their five hundred dollars only, or are they to have in the proportion which that sum bears to the investment? We say, in the latter proportion. This sum is charged to them, to be taken from their inheritance. It is an advancement by the father. It is an investment by them in the partnership, and in the increase of it, they are entitled to their respective shares. Their care, attention, and labor, has made the increase, so far as any such instrumentalities have done it. In effect, then, the father invests one thousand dollars, and each son five hundred. Beside this, all are to give care and labor, but the sons principally. If the father does not, he pays money. No other capital than this is required, and if any one puts in anything more, he is to have credit. Each may draw on the proceeds, or increase, for his subsistence. In a division, the father is to have two shares, and each son one share. Property which can be divided by number, is to be so divided. Other property, as land, for instance, is to be divided in manner following; each is to make his estimate; then the father's is to be doubled; and then the sum of all these sums is to be divided by four, and the result taken for the value. And should more than one desire the same piece of property, he who will pay the most, shall have it. This is more especially applicable to the realty. Thus far, we suppose the firm to continue regularly the period of its limitation. We come now to the provisions relating to a premature dissolution.

If either, or both, of the sons, desires to withdraw before

the expiration of the limitation, he or they may do so, on giving six months' notice; and should the firm be closed before the time limited, the sons are entitled to but one hundred dollars each of the capital stock, for each year of the existence of the company.  That is, and this means, one hundred dollars of the original investment, but this carrying with it, its due proportion of the profit or increase; for theirs was an investment as much as the father's; and besides, if they are not allowed the increase, then in case of a premature dissolution, the father takes all the increase, and they the investment only.  This might be; but there is nothing in this case to lead to so harsh a conclusion.  This construction is consistent with the thought before suggested, that the father makes an advancement of five hundred dollars in a partnership, which is to continue for five years; and now we see that if that partnership ceases before the five years, the sons are to have only at the rate of one hundred dollars for each year.

The cause stands before us on demurrer, and we arrive now at the allegations of the bill.  The partnership went on until April, 1849, when John S. sold all his right, title, and interest in the firm, to the father, withdrew from the concern, and went to California.  He then has no further interest, and we set him out of view.  But it appears that the partnership went on between the father, Jacob, and Benjamin P., the other son.  Technically, the first partnership was dissolved.  But it does not follow, as of course, that the whole affair must be, or was, wound up.  The bill alleges that John sold all his interest to his father, and it is fairly inferable, though not alleged in express terms, that the father and Benjamin continued on together as before.  Such being the case, they tacitly agree to continue the partnership, with themselves alone as partners.  The first effect now is, that the father has an interest of three-fourths, and Benjamin his original one-fourth.  The thought that the whole matter has stopped, and there is now no partnership at all, cannot be accepted.  This would commit a fraud upon Benjamin.  It must be understood that he and his father

went on together; and he alleges that he continued, after John's withdrawal, till the 1st October, 1850, to work said land, and to give his sole attention to the best interest of said company. He then avers that at the date last mentioned, in pursuance of notice given by the said Jacob to him, and by mutual consent, the affairs of said company were closed; that he and the said Jacob had a full settlement and division of all the personal property belonging to the said company, so far as petitioner's share was concerned (except as afterwards mentioned), and that they settled their accounts of money, and property paid in and out by each. The exceptions referred to are, the claim of fifty dollars a year for labor, his share in the clip of wool for that year (1850), the one hundred dollars a year in the capital stock, and his share in a "claim" sold to C. D. Reinking for fifty dollars. All this shows (on demurrer), that the partnership went on between Benjamin and his father; and it shows further, that all claims as to the personalty were settled, except those specified, leaving open only those named as to personalty, and the broader claim on the land, on which they had not agreed when the death of the father occurred, on the 6th of May, 1852.

Let us examine these claims on the personalty. The provision of the original articles as to the fifty and the hundred dollars, is as follows: "Said Jacob is to be charged with fifty dollars for each and every year, commencing the first of August, 1847, to be deducted out of his share of the dividend on the final settlement, unless he furnish labor to that amount at his own expense; and if from infirmity of old age, or if said Jacob should feel inclined to withdraw from attending to the affairs of the firm at the expiration of two years, one hundred dollars for each year shall be charged to him, and deducted out of his share as above stated." Bad grammar does not make bad pleading. The meaning is evident, that the father is to pay fifty dollars each year, unless he furnish labor to that amount, and that he may withdraw altogether after two years, paying one hundred dollars each year. These sums are to be deducted from his

share of the dividend.   The question naturally arises, whether these sums or payments are of such a character that he may share in them as a partner.   We think not. The partners in fact, contribute equally to the capital stock, and are to give their personal care and labor to the common concerns.   This must be supplied by some one; and if the father does not supply his proportion of labor, it is provided that he shall pay a certain sum as an equivalent; and if after two years, he sees fit to withdraw his care and labor altogether, he is to pay a certain other sum as a commutation.   These payments are instead of the labor and care which are due from him as a partner.   They are to purchase, or to pay for, them, if he does not render them. They are capital, put in instead of labor.   He shares in the increase or profit on the partnership property, created by this labor and care, but he cannot share in the first payment.   He might as well charge for the labor, had he rendered it.   If he did not actually pay these sums (such as might be payable), he is to be charged with them and interest, but not with the profit of them.   Another item which complainant alleges he is entitled to, is his portion of the clip of wool for 1850, but he has waived this.

The only remaining item of personalty, is the one-fourth of the price received for a claim sold Reinking.   This he is entitled to.

We are next brought to the question, whether this proceeding is legally correct.   What is it?   The survivor of two partners brings his bill against the personal representatives and the heirs at law of the deceased partner, in relation to both personalty and realty; but both relate to and concern the partnership.   The whole is partnership matter.   It is a bill to settle the affairs of the firm.   He sues the representatives in relation to the personalty; and he sues both them and the heirs, in relation to the realty, connected with the partnership.   It is true that a surviving partner may take the affairs of the firm into his own hands, and settle them. But this supposes them in such a state that he can do so: or rather, it does not cover the case of a deceased partner,

being indebted to the firm.    It does not preclude the survivor from looking to the estate of the deceased debtor-partner.    But he alleges that all matters relating to the personalty were settled, except certain and specific ones, so that there is, in truth, no general partnership settlement to be made or called for.

This preliminary review of the contract of partnership, has been necessary to the clear understanding of the grounds of demurrer, and in order to save a great amount of repetition in considering those grounds severally.    We now take up the demurrer, and examine the causes briefly in their order.

The first and second causes, belonging together, are, that the petition shows an unsettled partnership account, but does not show the amount of capital stock furnished by each partner; nor the amount which each expended in carrying on the partnership; nor that which each received therefrom; nor the interest of the several partners; nor the manner of conducting the business; and so gives no basis upon which the court can decree an account and settlement of the partnership business.    The petition does show the original amount of capital stock furnished by each, and so far as that affects it, their respective interests also.    If either added more afterwards, he should make it appear.    If the complainant claims no more, he gets no more.    If the deceased partner furnished more, his representatives are to show it.    It is not to be assumed that he did, and the bill is not defective for not stating that he did.    To hold it so, would be assuming this, without either averment or proof; and the same reasoning precisely, applies to the matter of the amount expended by each in the affairs of the firm.    As to the amount received by each from the firm, it is not a necessary inference that either one took anything out.    But further, this point is covered by the fact, that the bill explicitly alleges that the two partners, Jacob and Benjamin, had a full settlement and division of all the personal property of the partnership, which, from the tenor and allegations of the bill, must be understood to include all the claims to personalty, except certain specific ones.    It is not perceived what

statement of the mode and manner of conducting the concerns, farther than is made, would be of any importance. The interest of the parties is given definitely, and there is a sufficient basis upon which to proceed. The third cause, being general, will be noticed hereafter.

Fourth : That the verbal contract in relation to the partition of the lands, or the setting off to plaintiff the certain lands which he claims, not having been executed before the death of the said Jacob, those lands, at his death, became part of the assets of his estate, in like manner with any others owned by him at his decease. That the lands were purchased in the name of the father, we are not disposed to regard as a bar to the complainant's claim. It was provided that if the partnership ceased before the expiration of its term, the sons were to receive of this capital stock only *pro rata;* and therefore, to control this, it was requisite that the title should be held by him who furnished it in the first instance, until subsequent events should show how much, or what proportion, the sons were to receive. Thus, if they had continued together the five years, they would have received their full proportion of one-fourth each. But before that time, John has sold his interest and left; Benjamin continues longer, and until the father terminates the relation. It is not till this event, that Benjamin can tell what he is entitled to. This would seem to afford adequate reason for the title remaining in the father, but it does not present any substantial obstacle to the son's obtaining his share. There is a written contract, signed by the parties, containing all the essential matters which could, in the nature of the case, be then specified. What items of property should come into the firm, was in the future. What tracts of land would be bought and used by, or appropriated to, the partnership, was to be determined by their future action. These must be ascertained by the evidence. There is in this, no violation of the rules of law in relation to written instruments, or to contracts concerning land. The contract is complete, and in writing, but the objects to which it applies are to be pointed out. At least, we are disposed to so regard

the question at present, on this demurrer, and leave it to be brought up again, in a more direct form, and on fuller discussion, if the parties see cause. This applies to the claim as a partner, to a share in the land; but it may be that it does not apply, in full force, to the claim to the certain parcel or parcels. But should the complainant sustain his allegations in respect to these, equity would dictate that these should enter into his portion, if a division were decreed.

The fifth cause is covered by the preceding remarks. The sixth cause is, that if petitioner has any just claim, it is one which can be prosecuted in the county court (as a court of probate) only. Sections 1362 and 1363 of the Code, present no objection to this suit. The cause all taken together, could not be conducted in the county court, and it is very doubtful whether any part of it, taken separately, could be.

The seventh and eighth causes, with the sixth, go to a misjoinder of parties, and subject matter. All this is answered by the consideration that this is a bill in equity to settle an unsettled portion of the affairs of a partnership, relating to both personalty and realty, in which both the personal representatives and the heirs at law of the deceased member, are concerned, and which cannot well be separated, or which it is not necessary, at least, to disjoin. And as to the probate court, again, that has no authority in a bill for a specific performance; neither has it in a bill in equity, to settle the affairs of a partnership.

The ninth cause of demurrer alleges that the parties have agreed upon the tribunal or forum by which their business was to be settled, and that the petition gives no reason for applying to this court, and invoking its aid, in settling the partnership. This seems to be completely answered by an averment of the bill, that the complainant has frequently endeavored to have the executors and heirs settle the said claims, and has applied to them to have the said one-fourth portion of petitioner set off to him, under and by virtue of said agreement, and that they have hitherto failed, neglected, and refused so to do. The agreement provides that, "should any of the company die, his surviving friends, or a justice

of the peace, shall appoint one or more judicious disinterested person or persons, to act in his stead in making the distribution of property, in conformity with the terms before stated." The third cause, that the petition discloses no matter upon which the court can act, or over which it has original jurisdiction, is involved in the fifth, sixth, seventh, and eighth causes, and is answered by the remarks made upon those. The case being looked at closely, and the cause of action being analyzed, the apparent grounds of demurrer disappear.

The demurrer should have been overruled, and the cause is remanded for the respondents to answer.