BROOKLYN TRUST CO. et al. v. McCUTCHEN.

(Circuit Court, E. D. New York.   July 14, 1911.)

PARTNERSHIP (§ 257*)—ACCOUNTING—GOOD WILL.

Partnership articles provided that all assets should belong to two active partners, and in the event of the death or withdrawal from the firm of either of them, after an equitable accounting to him or to his estate of his interest in the same, the ownership should be with the surviving active partner; that for the purpose of determining such interest, an agreed valuation should be made at the beginning of each year of the trade-marks, brands and other assets of the business or firm which did not appear on its books, which, as regards them, should be by mutual consent the basis of the equitable accounting; that in the event of the death or withdrawal of either party, the liquidation of the business should remain with the surviving partner. The partners continued under such articles for ten years; the agreement being mutually extended without formal re-execution or signature. The firm kept books showing their ordinary assets and liabilities, "trade-marks" carried as an asset from year to year, valued at $15,000. *Held* that, on the death of one of the partners it would not be assumed that such amount included the good will of the business exclusive of trade-marks but that the good will consisted of general credit and reputation of the firm, etc., for which the continuing partner was bound to account, though no valuation thereof had been made annually in the firm's books.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig. § 257.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Brooklyn Trust Company and another, as executors of the will of Leonard J. Busby, deceased, against Charles W. McCutchen. On demurrer to complaint. Overruled with leave.

Dykman, Oeland & Kuhn (William N. Dykman and Arthur E. Goddard, of counsel), for plaintiffs.

Ivins, Mason, Wolff & Hoguet (Robert Louis Hoguet and William L. Ransom, of counsel), for defendant.

CHATFIELD, District Judge. A suit has been brought by the executors of one Busby, deceased, who before his death was in partnership with the defendant, under articles of partnership signed some 10 years previously, and extended by mutual agreement but without formal re-execution or signature. In general these articles of partnership provided for the conduct of a business from which the senior partner had just retired, but which was to be conducted under the same name as when he had been an active member of the firm. He was to receive interest upon any money left invested in the firm, but had nothing to do with the profits or losses, and as between him and the partners who were to continue the business, he ceased any connection which has to do with this case. The firm has always been solvent. At the death of the partner whose executors are now bringing suit, a large amount of assets was on hand, and the firm was selling a number of brands of goods represented by registered trademarks, and also enjoyed a large domestic and export business (which had to do generally with the goods represented by these trade-marks and brands) with a valuable and extensive goodwill. The articles of agreement contain the following provisions:

"V. All assets * * * shall belong to the two active partners, * * * and in the event of the death or withdrawal from the firm of either of them, after an equitable accounting to him or to his estate of his interest in the same, the ownership shall be with the surviving or remaining active partner. For the purpose of determining such interest an agreed valuation shall be made at the beginning of each business year of the trade-marks, brands and other assets of the business or firm which do not appear upon its books, which shall as regards them be by mutual consent the basis of the aforesaid equitable accounting.

"VI. The partnership accounts and statements shall be made up to the first day of February in each year."

"VIII. * * * In the event of the death or withdrawal from the firm of either party, the liquidation of the business shall remain with the surviving or remaining partners."

The firm kept books showing their ordinary business assets and liabilities. It appears by the complaint, especially as amended upon the argument of this demurrer, that these books also showed the entry of an asset carried along from year to year under the designation of "trade-marks, $15,000," and that this $15,000 covered in no way the value of the good will or firm name, but was an inventory estimate of the mercantile value of the trade-marks as a brand or name for certain goods.

In so far, of course, as the good will in general might be treated as including whatever reputation or advertising was connected with the

name of the firm, some of this $15,000 might have been included in good will, but the particular form of good will with which this action has to do is not the value to the business of the particular registered marks (for this had already been included). The general credit and reputation of the firm, the attraction of business which would later come to an established house, even if the particular trade-marks were transferred to other parties, is an asset for consideration herein. As the business year began upon the 1st of February, and as this partnership agreement was for a limited term, and inasmuch as the defendant has demurred to the complaint, thereby admitting the allegations set forth, it is evident that the partners, except for the first two years after the signing of the partnership agreement, did not take the trouble to even sign the articles for further extension, and that they never (during the course of the business) upon the 1st of February, nor during any business year, agreed upon the value of the other intangible assets of the firm, except in so far as the item of $15,000 for trade-marks partially satisfied that provision.

The plaintiffs have sued for an equitable accounting and for the recovery of the value upon such an accounting of the good will or intangible asset represented by the business itself. They admit that the surviving partner had the right to liquidate, and that upon an accounting or liquidation, in the sense of payment to them of the amount representing the deceased partner's share, the business was to remain the property of the surviving partner. In the absence of insolvency, liquidation (especially where there is an agreement that the business shall belong to the surviving partner upon liquidation and accounting) must be held to mean a liquidating of amounts and a carrying out of the accounting, rather than a disposition of the assets to outside parties and a division of the proceeds between the parties themselves.

The plaintiffs suggest that by means of an accounting and ascertainment of profits for some preceding period, this court can liquidate or fix values, and then direct the payment by the surviving partner of the amount represented by good will over and beyond the trade-marks item referred to. The defendant suggests in support of his demurrer that, upon the complaint, the plaintiffs cannot have a liquidation or an equitable accounting other than as exactly specified in the last part of paragraph 5; that is, according to the express figures or statements of the parties themselves, in the books which they have made by agreement the basis for the accounting, and this brings out the real point of difference between the parties.

The defendant has taken over the assets into his possession and gone ahead with the business, subject to any responsibility which may be put upon him. He has shown his readiness to pay for the various items set forth in the books. He disavows his responsibility for good will, on the theory that neither partner entered nor caused to be entered any figures representing this item of good will, and that therefore both of them assented to the proposition that the good will was of no value over and above the physical assets and the trade-marks which were actually recited.

It may be assumed that good will is an asset (Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605), and that if the parties had entered in their books, during the time when the agreement was in force, any value whatever for good will or other intangible assets, they would have been bound to liquidate upon that basis; and so long as they continued as partners (it being admitted by the pleadings that they assented to the continuation of the agreement), either of these partners might well be held estopped from denying that he had assented to a continuation of the valuation in so far as fixed. But to hold that either partner is estopped from showing that upon the first of February they neither took an inventory, figured up their profits, nor lived up to the agreement in all respects, and that therefore (at least after the expiration of the specified period) he is estopped from showing that they orally agreed not to carry out the agreement, as to some things which they might have orally agreed to continue in force, does not follow. Nor can it be determined as a matter of law that both parties voluntarily waived each one's right to any assets not shown by the books. The demurrer in effect puts the surviving partner in the position of claiming that he is entitled to enforce the unsigned extension agreement so as to hold for his own the entire business upon an equitable accounting; that is, upon a liquidation and payment by him of the value of his partner's share at the time of his death. But it cannot be held as a matter of law that he may also insist, by demurring to the complaint, that he is entitled to exclude from this equitable accounting everything which the partners did not include (or carelessly refrained from including) in writing or in books which were not kept according to the agreement, and which were only required to be kept by the very paper upon the nonsigning of which the defendant has any right to hold the property by agreement. Upon an ordinary accounting as partner, if the agreement had not been extended orally, payment for the good will would have to be included. Any actual evidence that good will was not carried at a substantial valuation, or that the partners agreed to treat it as of no value over and above the physical assets, should be considered, but this defense would have to be raised by answer.

The demurrer should be overruled, with leave to interpose any valid defense within the time specified in the order.