### BROOKLYN TRUST CO. et al. v. McCUTCHEN.

(District Court, E. D. New York. July 16, 1914.)

PARTNERSHIP (§ 257*)—ACCOUNTING—GOOD WILL.

Partnership articles provided that all assets should belong to two active partners, and in the event of the death or withdrawal of either after an equitable accounting to him or to his estate of his interest in the same, the ownership should be with the surviving or remaining active partner, that for the purpose of determining such interest, an agreed valuation should be made at the beginning of each year of the trade-marks, brands, and other assets of the business of the firm which did not appear on its books, which should, as regards them, be by mutual consent the basis of an equitable accounting, and that in the event of the death or withdrawal of either partner the liquidation of the business should remain in the surviving partner. The partners continued under

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such articles for a series of years, the agreement being extended without re-execution. There was no agreement, however, as to the valuation of the firm's good will, except that the trade-marks were carried on the books from year to year at a valuation of $15,000. *Held*, that the provision for annual valuation of good will was waived by the partners, and hence, on an accounting by the surviving partner with the executors of the deceased partner, the surviving partner was neither entitled to have the good will considered as included in the $15,000, at which the trade-marks, etc., were valued, nor was he entitled to such good will as of his separate property by virtue of his rights as surviving partner, but he was required to account for its reasonable value.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 563; Dec. Dig. § 257.*]

In Equity. Suit by the Brooklyn Trust Company and another, as executors of the will of L. J. Busby, deceased, against Charles W. McCutchen. On final hearing. Decree for complainant.

See, also, 189 Fed. 273.

Dykman, Oeland & Kuhn, of Brooklyn, N. Y. (Arthur E. Goddard and William N. Dykman, both of Brooklyn, N. Y., of counsel), for plaintiffs.

Ivins, Wolff & Hoguet, of New York City (Robert Louis Hoguet and Randolph W. Childs, both of New York City, of counsel), for defendant.

CHATFIELD, District Judge. The firm of Holt & Co., from 1861 to 1868, had as partners one Robert S. Holt and one S. O. Ryder. At some time during that period, another partner by the name of Searles had an interest in the business. In 1868 Mr. Ryder retired, leaving the ownership of the entire property with those who then composed the firm of Holt & Co. Mr. Ryder later placed upon the market a brand of flour under the same name as a well-known brand of Holt & Co. In 1882, the members of the firm of Holt & Co. brought an action against certain dealers who were buying and selling the brand of flour placed upon the market by Mr. Ryder. The action resulted in favor of Holt & Co., and upon appeal to the Supreme Court of the United States it was held, in Menendez v. Holt, 128 U. S. 514, 522, 9 Sup. Ct. 143, 32 L. Ed. 526, that good will, unless divided among the partners of a firm on its dissolution, remained with the firm itself, or those members of the firm who continued the business, when the partnership relation was severed by the withdrawal of one of the partners.

The issue at bar need not be now stated at length. This court, in Brooklyn Trust Co. v. McCutchen (C. C.) 189 Fed. 273, overruled a demurrer with respect to the complaint. In that opinion the facts and issues are sufficiently stated. Some of the items of testimony must, however, be taken up in order, as final hearing has now been had.

The Menendez litigation was ended after Mr. McCutchen, the present defendant, and Mr. Busby, the plaintiffs' testator, were members of the firm of Holt & Co. In 1885, a partnership agreement, which shows upon its face the effect of the Menendez decision, was entered into among the three partners of Holt & Co., under date of January 31, 1885, for a period of five years.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Paragraph II provided that the parties above named should contribute *"as the capital of the business"* such balances as should appear upon the balancing of the books. By paragraph III, losses and profits were to be divided equally. By paragraph IV, each partner was to be entitled to interest and to draw his share of the profits. Paragraph V then follows, in the same language as paragraph V of the partnership articles in effect at the death of Mr. Busby, and under which this suit is brought (See [C. C.] 189 Fed. at page 274), where paragraphs VI and VII are also quoted. Paragraph VIII provided that the agreement would be terminated upon 30 days' notice in writing, and that "in the event of the death or withdrawal of either partner, the liquidation of the business shall remain with the surviving or remaining partners." Immediately under the articles of agreement, follows this paragraph:

"New York, February 2, 1885. We hereby agree upon the sum of fifteen thousand dollars ($15,000) as the valuation for the current year ending Jan'y 31, 1886, of the assets referred to in article V of the foregoing articles of copartnership. Robert S. Holt.
"L. J. Busby.
"Chas. W. McCutchen."

Immediately thereunder, and dated January 30, 1890, there is a signed agreement to renew and extend the foregoing Articles of Copartnership, for the term of five years from February 1, 1890.

Upon January 31, 1895, the partnership agreement was again copied in exactly the same form, with the exception that paragraph III was changed so as to provide that Leonard J. Busby and Chas. W. McCutchen should be the managing and active partners of the firm, and that the losses and profits should be shared and apportioned equally by and between them; that the interest of Robert S. Holt should be nominal only, but that his name should be retained at his request; that he should be freed from liability by the guaranty of the other partners; that he should not be required to perform any service; and that he expressly waived all claim to any share in the profits of the business, but was to receive interest on such capital as he elected to leave in the business. At the bottom of this instrument is a signed agreement, extending it for two years to January 31, 1900. This extension is not dated, but evidently was made in 1898, the first agreement having three years to run from 1895. Each two years thereafter, a renewal of the agreement for two years was signed, until some time after February 1, 1904, when a paragraph was signed and added, as follows:

"In the event of the death of Robert S. Holt, the undersigned, L. J. Busby and Chas. W. McCutchen, hereby mutually agree to continue the business as surviving partners, under the same firm name of Holt & Co., during the term of the above agreement."

Upon January 31, 1906, the agreement was again signed and renewed for two years, and on January 31, 1908, it was again signed and renewed for *one* year.

Mr. Holt died in 1904, and the capital which he had invested in the business was paid by the partnership. No question of solvency could have been raised, and therefore it makes no difference whether he could

have been held as a partner before his death. After that event, the business was continued by Mr. Busby and Mr. McCutchen until the death of Mr. Busby, on February 23, 1908.

As was stated in the previous opinion, liquidation, in the sense of agreeing upon a definite amount from the books of the company, was had as to the amount to be paid to Mr. Busby's estate, and that amount has been paid by Mr. McCutchen, with the exception of the disputed item for which this suit has been brought. This is claimed by the plaintiff to be the sum of one-half the value of the good will of the business, including brands and trade-marks, and thus including the sum of $15,000 at which the item of trade-marks was entered in the various ledgers of the firm.

The defendant claims that this entry of $15,000, under the head of trade-marks, represented the agreed "valuation" referred to in paragraph V of both agreements, which valuation was to be used as a basis for accounting in the case of death or withdrawal of any member of the firm. It appears from the books of the firm that in 1895, the capital transferred under the terms of the partnership agreement contained an item called "Trade-mark a/c $15,000" as an agreed item, and that there was charged to profit and loss a corresponding item of $15,000. These items were carried into the private ledger of 1896 and subsequent years in the form of a charge under date of February 1st, and a credit under date of February 1st, of the following year. Each year also, from 1895 on, a balance sheet was made up under date of February 1st, containing, in the list of assets, that is, of property inventoried, entered in the books, an item "Trade-mark a/c $15,000." This inventory contained the various items of merchandise, stock, bonds, fixtures, real estate, etc., as well as the capital invested in the name of each partner.

Prior to 1895 the entries of these inventories and items do not appear in the testimony; but nowhere throughout the entire period was any signed "valuation," made at the beginning of each business year, "of the trade-marks, brands, and other assets of the firm" which did not appear upon its books, except the one entry for the current year beginning February 2, 1885, which has been quoted above, and in which the valuation was fixed at $15,000. For that year this valuation seems to have been entered in the books in the form of the item "Trade-mark a/c $15,000," and thus the assets represented thereby were shown by the books from that time on. If the value of the good will increased, then it was not listed as an asset, nor valued according to the agreement. It will thus be seen that at the outset, the partners provided for one year against any question on this point in case liquidation and accounting became necessary. Thereafter the books of the firm showed the asset of $15,000 put down as "Trade-mark a/c" throughout all the years subsequent to Mr. Holt's withdrawal from the right to participate in the profits of the firm.

It is evident that Mr. Holt intended to leave and did leave to his partners whatever property right, as well as risk, went with the good will and continuation of the business. He received a consideration therefor, and the litigation of Menendez v. Holt had clearly shown

what was meant thereby. He, therefore, had no wish to increase his own share by a further valuation, nor did he intend to give to one of the others (in case either withdrew before himself) a full share in the good will of the business, but as between the others, no such intent is shown. Neither of them showed any idea of giving to the other more than one-half of the whole.

After Mr. Holt's withdrawal, the books show the acquirement of a certain trade-mark known as the "Mount Vernon Brand," for which $3,000 was allowed, and which for a number of years was carried as an inventory asset item at that figure. No change was made in the $15,000 item, and the Mount Vernon item was finally marked off to profit and loss. The inventory showed great care with respect to every entry. The smallest articles were given a value, and included.

The plaintiff argues from the above that Mr. Busby and Mr. McCutchen treated the trade-mark account as one of the assets shown by the books in the same way as they treated the "Mount Vernon Brand," so long as it was entered as an asset on the books, and that these items were entered at their cost or capital valuation. It argues, further, that the particularity with which this was done and the care exercised by both partners, especially by Mr. Busby, who went over the inventories and made annotations and corrections therein each year, go to show evident knowledge of what was included, and (by necessary inference) full knowledge and appreciation on their part of the fact that good will was an asset, not shown by the books, and therefore fixed or valued for the purpose of an accounting, as required by article V of the partnership agreement. The plaintiff, therefore, concludes that after 1886 and until 1905, none of the partners attempted to carry out the requirement of this article. The plaintiff further concludes that after 1905 the new agreement accepted the cost valuation of this trade-mark account, in accordance with Mr. Holt's agreement, as an item in the capitalization in which he shared, and as to which his part was left in the business, but that Mr. Busby and Mr. McCutchen, as between themselves, saw fit to take the risk of failure to comply with article V of the partnership agreement, except in so far as they were bound to recognize the property in which Mr. Holt was interested.

The plaintiff further contends that in the absence of any expressed valuation, or, in other words, in spite of the failure to comply with section V of the agreement, all "trade-marks, brands, and other assets of the firm, not appearing upon the books," could be shown by evidence, and that the ordinary rules of law with respect thereto gave to each partner an equal share, while at the same time recognizing that the liquidation of the business should remain with the surviving or remaining partner (under paragraph VIII), and that (under paragraph V) the ownership of the entire business should pass to the survivor exactly as had been contemplated by Mr. Holt, and as had been provided for by him for the continuation of the business under the old firm name. It will thus be seen that the plaintiff treats the partnership agreement as abrogated, in so far as there was not compliance by an express written or oral valuation of the assets for the purpose of ar-

ticle V, and in other respects insists on the enforcement of the partnership agreement.

The plaintiff argues that the defendant is ignoring the methods of entering the trade-mark account as an asset, and the methods of figuring and entering the item of capital of the various partners and of such assets as the Mount Vernon Brand, when the defendant attempts to show that this inventory item, known as "'Trade-mark a/c," was intended to be and actually was the agreed valuation upon which the accounting was to be had. The defendant, on the other hand, charges that the plaintiff is inconsistent in assuming that the partnership articles were not carried out in their entirety, and is estopped from urging the point. The defendant contends that the entry of the items entering into the capital account, and the carrying of the inventory item of trade-marks at the sum of $15,000, all through the periods involved, show an agreement by Mr. Busby and Mr. McCutchen to keep the sum of $15,000 as an express value for "trade-marks, brands, and other assets," not appearing upon the books. The defendant asserts that Mr. Busby and Mr. McCutchen, by their careful scrutiny of all these matters, accepted and made the book entry of the trade-mark account among the assets of the firm, the express valuation which, in the year 1885, was entered upon the partnership agreement.

The defendant cites the cases of Frederick v. Cooper, 3 Iowa, 171, United States v. Robeson, 9 Pet. 319, 9 L. Ed. 142, Perkins v. United States Electric Light Co. (C. C.) 16 Fed. 513, and American Bonding & Trust Co. v. Gibson County, 127 Fed. 671, 62 C. C. A. 397, to show that the plaintiff is bound by the partnership agreement to the extent of being unable to claim any item not set forth in accordance therewith, and that the plaintiff cannot treat the agreement as abrogated or as unfulfilled in any respect, unless it can prove an actual modification or express amendment thereof. The defendant urges the proposition that the written agreement cannot be varied so long as it is in force.

The defendant has introduced some testimony with respect to a partnership in which Mr. Busby was interested with one Buttfield, who was called as a witness. Mr. Buttfield testified that in 1897 Mr. Busby questioned an item of $20,000 as the valuation of the good will, etc., between him and Mr. Buttfield as too great, in view of the fact that Mr. McCutchen and Mr. Busby placed the value of the entire assets of that nature in the firm of Holt & Co. at but $15,000. Mr. Buttfield's testimony was not entirely the same in his statements of this conversation. His testimony would be just as consistent with the theory that Mr. McCutchen was comparing the trade-mark values of the two firms, or that he was comparing the good will of the firms in so far as it consisted of trade-marks, that is, tangible assets.

Objection was made to any evidence of transactions with the decedent, under section 829 of the Code of New York, and section 858, Rev. St. (U. S. Comp. St. 1901, p. 659). It appears that this action, on an exactly similar complaint, was partially tried in this court, and discontinued when it was learned that the defendant had been required to submit a verified answer; and it is contended that by this the plaintiff had opened the door to oral testimony as to such transactions. The

present action was immediately, instituted, and it does not seem that the case is similar to that where an executor is required to set forth his claim in advance of hearing, under section 2709 of the New York Code; and the plaintiffs' objections would therefore seem to be good in so far as the testimony under objection attempts to relate personal transactions or communication with the deceased.

But the testimony of Mr. Buttfield and Mr. McCutchen with respect to these matters adds nothing in the way of proof, and is not at all objectionable as it stands. Mr. McCutchen's evidence generally was to the effect that Mr. Busby fully understood the requirements of the partnership agreement, and intended to have the inventory items treated as express valuation. It must be held that his present understanding of the matter and his belief that such was the case is the only basis for his testimony. It must also be held that both Mr. Busby and Mr. McCutchen appreciated the necessity shown by the case of Menendez v. Holt for a definite agreement as to the assets of the firm in case of termination or dissolution, in order to prevent application of the ordinary rules of law. With full knowledge and appreciation of this fact, they seem to have both taken the risk of becoming the surviving partner and thereby acquiring possession of the entire assets, if the interest of Mr. Holt, or of the retiring or deceased partner, was limited to a share in the $15,000 expressed in the capitalization figures; but they also assumed the obligations which went therewith. Their conduct shows an abrogation or failure to comply with the provisions of article V, rather than any idea that $15,000 represented a basis for an equitable accounting. When considering the proposition to sell the business to certain of their employés, they put the valuation of the good will at $75,000; and both Mr. Busby and Mr. McCutchen acquiesced in the statement of Mr. Busby, to the effect that the business was the result of their individual effort, and that they intended to treat it as such, and not to regard the value of the good will as a mere incident to the inventoried assets.

The plaintiff charges the defendant with a desire to retain the benefits of the work of both partners and to inequitably deprive Mr. Busby's estate of his share. The defendant accuses the plaintiff of a desire to obtain assets which Mr. Busby had agreed should belong to his partner or successor, if he should be the one who first died or retired, and that such action on the part of the plaintiff is illegal and inequitable. As was said in the previous opinion, the burden is evidently upon the plaintiffs to establish the fact that the partnership agreement was not carried out, and was therefore to a certain extent, abrogated. It is not necessary to go so far as to hold with the plaintiffs' contention that the burden is thrown upon the defendant of proving an express compliance with the provisions of article V. The evidence indicates that article V was not carried out, and by the acts of the partners themselves, the partners consciously waived and therefore in effect set aside the terms of their agreement, so far as the valuation of good will was concerned. If the agreement was set aside in this respect, the surviving partner is bound to account therefor; and an accounting as to all assets, as to part of which liquidated valuations are stated, would also include the un-

liquidated or unmentioned or unconsidered (but not unknown) asset, which would have to be determined according to the rules of law in such case. This is precisely what happened in the present matter. The item of good will is capable of ascertainment, and ought to be possible of fair adjustment without arbitrary capitalization from probabilities based upon profits of preceding years. In other words, the business men interested should be able to consider this item with more accuracy than the court, if they can reach an agreement.

The rule established by certain cases may furnish a basis for computation where no agreement between the parties can be had; but the question of amount will be left for the entry of a decree with an accounting to determine any items necessary, if agreement cannot be reached.